**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| EDWARD HENDERSON, individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COX ENTERPRISES, INC. d/b/a THE ATLANTA JOURNAL-CONSTITUTION,<br><br>Defendant. | Civil Action No. 1:26-cv-02295-TWT |

**PLAINTIFF EDWARD HENDERSON'S**
**OPPOSITION TO DEFENDANT COX ENTERPRISES, INC.'S**
**MOTION TO COMPEL ARBITRATION AND STAY CASE**

Plaintiff Edward Henderson ("Plaintiff"), by and through his undersigned counsel, respectfully submits the following Opposition to Defendant Cox Enterprises, Inc. ("Defendant," "Cox")'s Motion to Compel Arbitration and Stay Case. For the reasons set forth below, Defendant's Motion[1] should be denied.

[1] Defendant Cox Enterprises, Inc.'s Motion to Compel Arbitration and Stay Case, Dkt. No. 21, is cited hereinafter as "Def.'s Mot." Defendant's Memorandum of Law in Support of its Motion to Compel Arbitration and Stay Case, Dkt. No. 21-1, is cited hereinafter as "Def.'s Mem."

# I. INTRODUCTION

Edward Henderson filed his Class Action Complaint ("Compl."), Dkt. No. 1-1, in the Superior Court of Fulton County on February 27, 2026, alleging that defendant Cox Enterprises Inc., d/b/a the *Atlanta Journal-Constitution,* violated the Video Protection Privacy Act, 18 U.S.C. § 2710, *et seq.* ("VPPA") and invaded Plaintiff and the proposed class's privacy by embedding the Meta Pixel on its website. Compl. ¶¶ 73–88. Defendant filed a Notice of Removal with this Court on May 14, 2026, Dkt. No. 1, and now moves to compel arbitration and stay the action pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"). *See generally* Def.'s Mot.

Plaintiff's claims are not subject to arbitration because (1) no valid agreement to arbitrate exists between the parties and (2) Defendant has acted inconsistently with any right it may have to arbitrate. Despite Cox's representations in its Memorandum and supporting documents, genuine issues of material fact exist as to whether Plaintiff was presented with Defendant's Terms of Use such that he could have assented to arbitrate his claims. Further, Defendant has not registered its arbitration clause with the American Arbitration Association ("AAA"). As the Eleventh Circuit has held, "failure to comply with the rules of its chosen arbitral forum renders the remedies specified in Sections 3 and 4 of the FAA unavailable to [defendant] and, accordingly, … the plaintiffs who have

contracts with [defendant] may proceed to litigation." *Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355, 1362–63 (11th Cir. 2023).

## II. LEGAL STANDARD

"On a motion to compel arbitration, a court undertakes a two-step inquiry to determine (1) whether the parties agreed to arbitrate the dispute in question and, if they did, (2) whether legal constraints external to their agreement foreclose arbitration." *Antonetti v. Activision Blizzard, Inc.*, 764 F. Supp. 3d 1309, 1315 (N.D. Ga. 2025) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). A summary judgment standard applies to the Court's determination as to whether the parties entered into an arbitration agreement. "A district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325 (11th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). "[A] genuine factual dispute concerning contract formation precludes a court from deciding as a matter of law whether the parties entered into an arbitration agreement." *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 297–99 (2010).

## III. ARGUMENT

Section 2 of the FAA provides: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy

thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, *save upon such grounds as exist . . . for the revocation of any contract.*" (emphasis added). To succeed in compelling arbitration, Defendant must show that it formed a valid, binding contract on that clause with Plaintiff. *E.E.O.C. v. Waffle House*, 534 U.S. 279, 293 (2002) (holding that the Federal Arbitration Act "does not require parties to arbitrate when they have not agreed to do so"). While the FAA "established a liberal federal policy favoring arbitration agreements[,]" *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1213 (11th Cir. 2021), "any presumption favoring arbitration does not apply to disputes about whether an agreement to arbitrate has been made." *Hawkins v. CMG Media Corp.*, No. 1:22-CV-04462-JPB, 2024 WL 559591, at *2 (N.D. Ga. Feb. 12, 2024) (citing *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014)). Indeed, "[t]he federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022).

Plaintiff cannot be compelled to arbitrate his claims under the VPPA and for invasion of privacy because Plaintiff and Defendant never formed a contract to arbitrate. Further, Cox has acted inconsistently with any right to arbitrate because it has failed to follow American Arbitration Association ("AAA") policies by registering the arbitration clause contained in its Terms of Use with the AAA.

Therefore, neither prong of the test articulated in *Antonetti* is satisfied, and Plaintiff cannot be compelled to arbitrate his claim.

**A. Plaintiff did not form a contract to arbitrate with Defendant.**

State law governs the issue of the existence of an agreement to arbitrate under the FAA. *Bazemore*, 827 F.3d at 1330. Under Georgia law, the elements of valid contract formation are: (1) the parties are able to contract, (2) consideration, (3) the assent of the parties to the terms of the contract, and (4) a subject matter upon which the contract can operate. Ga. Code § 13-3-1. The element of assent requires "(a) a meeting of the minds (b) on the essential terms of the contract." *Regan v. Stored Value Cards, Inc.*, 85 F. Supp. 3d 1357, 1362 (N.D. Ga. 2015). Defendant must prove the existence and terms of the agreement "by a preponderance of the evidence[.]" *Wallace v. Triad Sys. Fin. Corp.*, 442 S.E.2d 476, 478 (Ga. Ct. App. 1994).

Defendant has not proved the existence of an agreement to arbitrate because it has not established that Plaintiff assented to its Terms of Use. Defendant's Terms of Use were not conspicuously displayed—in fact, even if the Court accepts the depictions of the subscription screen contained in Defendant's Memorandum and supporting declaration, the Terms of Use were *obscured* when Plaintiff was invited to subscribe. *See* Def.'s Mem. 4; *see also* Declaration of Zachary McGee ("McGee Decl."), Dkt. No. 21-2, at 5. Therefore, no valid contract to arbitrate exists under

Georgia law, and absent such an agreement, "a court cannot compel the parties to settle their dispute in an arbitral forum." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986)).

Defendant's Memorandum and supporting declaration speak in generalities about what Plaintiff would have seen when he subscribed and argue that these bare inferences alone conclusively establish Plaintiff's assent. *See, e.g.*, McGhee Decl. ¶ 8 ("At that point, Plaintiff *would have seen* a screen advising him of the need to subscribe, offering buttons for plan options, and disclosing that subscribing would subject Plaintiff to governing contractual terms." (Emphasis added)). As the Eleventh Circuit found in *Bazemore*, evidence of what "would have been sent to plaintiff is no more than a mere scintilla of evidence[.]" 827 F.3d at 1334. The Declaration contains "depictions of that screen on an Android smartphone at the time Plaintiff signed up on May 14, 2024 and October 15, 2025," McGhee Decl. ¶ 8, but the images themselves contain no dates. McGhee Decl. at 4–5. Further, neither the Declaration nor the Memorandum explain where these images came from. At the very least, an issue of material fact exists as to how Defendant's Terms of Use were presented to Plaintiff.

Nonetheless, Defendant represents that Mr. Henderson would have been presented with Defendant's Terms of Use in a similar manner to that depicted in its

Memorandum. As Cox itself concedes, Plaintiff would have had to "navigate through *a sequence* of screens" to subscribe, none of which state, in conspicuous text or otherwise, that by subscribing to Defendant's content, Plaintiff is purportedly agreeing to be bound by arbitration and waiving his rights to a typical trial by judge and jury. *See* Def.'s Mem. 3–6. Further, the arbitration clause contained in the Terms of Use that Plaintiff is alleged to have agreed to is buried several pages deep in the document.

According to Defendant, when a subscriber follows the hyperlinks to its Terms of Use, Subscriber Policy, or Privacy Policy, these documents "immediately" disclose that subscribers will be bound by an arbitration clause. Def.'s Mem. 7–8. But Defendant's own supporting documents show that this is not the case. Exhibit A to the Declaration of Zachary McGhee contains the Subscription Terms and Conditions that supposedly govern Plaintiff's subscription to the AJC. *See* Ex. A to McGhee Decl. at 1. Besides one cursory reference to arbitration in the introduction, this document contains no arbitration clause. *Id.* Exhibit B to the Declaration purportedly contains the applicable Terms of Use. This document makes the same fleeting reference to arbitration in the introduction as the Subscription Terms and Conditions, *see* Ex. B to McGhee Decl. at 1, but the clause outlining the material terms of any agreement to arbitrate does not appear until *page 26*. *Id.* at 26–27. Assuming that the hyperlink to Defendant's Terms of

Use was *not* obscured (as it is in Defendant's depictions of the subscription screen), a jury could determine that a reasonable smartphone user would not see this as an "immediate" disclosure.

The Terms of Use did not appear to Plaintiff on an "uncluttered" screen (if they appeared at all), as Cox suggests. Def.'s Mem. 13. On the contrary, as the screenshots contained in Defendant's Memorandum show, the link to the Terms of Use follow several paragraphs of small print that are difficult to read (even though Defendant has reproduced them to fill the page). Def.'s Mem. 4. The link to the Terms *do not* "appear[ ] directly below the buttons for registration" through which Defendant contends Plaintiff manifested his assent. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017). Further, Plaintiff could have selected and proceeded with his subscription without ever needing to scroll down completely to see the hyperlink; this alone is dispositive. Def.'s Mem. 4; *see also Meyer*, 868 F.3d at 78 (finding that user was on notice of arbitration clause where "the entire screen is visible at once, and *the user does not need to scroll beyond what is immediately visible to find notice of the Terms of Service*" (emphasis added)).

Plaintiff "cannot have assented to [defendant]'s terms and conditions if he never had the opportunity to see them." *Thornton v. Uber Techs., Inc.*, 858 S.E.2d 255, 259 (Ga. Ct. App. 2021). In *Thornton*, the Court of Appeals of Georgia reversed the lower court's order compelling arbitration, finding that a question

existed as to whether "the terms and conditions were either never displayed or displayed for an unreasonably short amount of time such that [plaintiff] would not have seen them." *Id.* If, as Cox asserts, Plaintiff was presented with screens like those depicted on page 4 of its Memorandum, Plaintiff could have easily subscribed without seeing the link to Defendant's Terms of Use. Def.'s Mem. 4. Plaintiff, or any subscriber, could have simply selected the "$9.99/month" or "$99/year" options without being shown the Terms of Use or Defendant's statement that "by subscribing, you are agreeing to our Terms of Use[.]" *Id.* This Court therefore cannot conclude that Plaintiff assented to arbitration as a matter of law. *Thornton*, 858 S.E.2d at 259.

Likewise, the payment screen shown in Defendant's Memorandum does not contain a link to Defendant's Terms of Use, nor does it state that by selecting "Subscribe" Plaintiff would be bound by Defendant's Terms. *See* Def.'s Mem. 7. Rather, the payment screen states that "[b]y tapping 'Subscribe,' you agree that your subscription automatically renews until cancelled" and then provides a hyperlink to *Google Play's* Terms of Service. *Id.* For any one of these reasons, let alone all collectively, Plaintiff and Defendant did not enter into a binding agreement to arbitrate, and this Court should deny Defendant's Motion.

**B. The action cannot be referred to arbitration because Defendant has not complied with AAA policies, meaning that the AAA will not accept jurisdiction.**

Under the second prong of the test articulated in *Antonetti*, when weighing a motion to compel arbitration, courts must determine whether a "legal constraint" forecloses arbitration. 764 F. Supp. 3d at 1315. "Although arbitration agreements governed by the FAA are to be liberally enforced, courts will not compel arbitration when the party who seeks to arbitrate has waived its right to do so." *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1200 (11th Cir. 2011). Where a party that seeks to compel arbitration has failed to secure the AAA's agreement to accept jurisdiction, that party has waived its right to compel arbitration with the AAA.

As the Eleventh Circuit has found:

> [a] business intending the AAA to administer consumer arbitrations must notify the AAA, submit its arbitration provisions for an administrative compliance review, and pay an associated fee. If the AAA finds that the provision substantially complies with its due process safeguards, the AAA may agree to administer arbitrations under the clause and include the provision in its public database.

*Merritt Island Woodwerx, LLC v. Space Coast Credit Union*, 137 F.4th 1268, 1271 (11th Cir. 2025) (citation omitted); *see also Bedgood*, 88 F.4th at 1361. Failure to do so is a waiver of the right to arbitrate, and "post-filing conduct cannot cure the prior noncompliance. Any rule to the contrary would result in gamesmanship by

companies attempting to remedy an arbitration roadblock that they knowingly caused were they to draw a judge they didn't like[,] or wanted to waste counterparty resources spent on litigation." *Merritt Island*, 137 F.4th at 1276.

As of the date of the filing of Plaintiff's Opposition, Defendant has not registered its arbitration clause with the AAA. The AAA's Consumer Arbitration Rules make clear that the determination whether a party has complied with the AAA's policies is an administrative decision that can and should be made by the AAA before it refers the case to an arbitrator. *Bedgood*, 88 F.4th at 1364. *See also* 2025 Consumer Arbitration Rules and Fees, R. 12.[2]

The AAA's homepage for its registry of arbitration clauses[3] states that "[o]nly after the AAA reviews the submitted arbitration clause for compliance with the AAA[']s minimum due process standards in consumer arbitrations, receives the annual consumer clause registry fee, and determines it will administer consumer disputes pursuant to the arbitration clause will the business be included on the Registry." A search of the database using the business names "Cox Enterprises, Inc." and "Atlanta Journal-Constitution" yields no results. The screenshots that follow are accurate depictions from the AAA's website as of June 23, 2026:

---

[2] Accessible at https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_rules.pdf.

[3] Accessible at https://apps.adr.org/ClauseRegistryUI/faces/org/adr/extapps/clauseregistry/view/pages/clauseRegistry.jsf.







Declaration of Nicholas A. Colella, ¶¶ 3–5.

Cox has therefore "not yet attempted to remedy its noncompliance with the AAA" and has "acted inconsistently with its arbitration right by not trying to remedy the barrier to arbitration that it had caused." *Merritt Island*, 137 F.4th at 1274. This fact is fatal to Defendant's argument. Therefore, Defendant's Motion to Compel Arbitration and stay the present action should be denied.

Regardless of whether Plaintiff entered an agreement to arbitrate this dispute with Cox, Cox has failed to secure the AAA's acceptance of jurisdiction to hear this claim. Under its rules, it will not accept this case because Cox has not properly registered the agreement. This Court should therefore find that Cox has waived its right to compel arbitration, and any decision to the contrary will be a waste of the parties' resources, because they will be forced to return to this Court when the AAA rejects the case.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Compel Arbitration and Stay Case should be denied in its entirety.

Dated: June 23, 2026

Respectfully submitted,

*/s/ Nicholas A. Colella*
Nicholas A. Colella (GA Bar No. 299972)
Anasuya Shekhar (*pro hac vice*)
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
nickc@lcllp.com
anasuya@lcllp.com

MaryBeth V. Gibson (GA Bar No. 725843)
**GIBSON CONSUMER LAW GROUP, LLC**

Business Telephone 4279 Roswell Road
NE, Suite 208 - 108
Atlanta, GA 30342
Telephone: (678) 642-2503
marybeth@gibsonconsumerlawgroup.com

*Counsel for Plaintiff Edward Henderson*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this document has been prepared in Times New Roman 14-point font in compliance with Local Rule 5.1(C).

**LYNCH CARPENTER LLP**

*/s/ Nicholas A. Colella*
Nicholas A. Colella (GA Bar No. 299972)

**CERTIFICATE OF SERVICE**

The undersigned certifies that on June 23, 2026, I caused PLAINTIFF EDWARD HENDERSON'S OPPOSITION TO DEFENDANT COX ENTERPRISES, INC.'S MOTION TO COMPEL ARBITRATION AND STAY CASE to be electronically filed with the Clerk of Court and served upon all parties through the CM/ECF system and by electronic mail as follows:

WATSTEIN TEREPKA LLP
Ryan Watstein
14th Street Northeast
Suite 2600
Atlanta, Georgia 30309
ryan@wtlaw.com

ORRICK, HERRINGTON & SUTCLIFFE LLP
Aravind Swaminathan (*pro hac vice*)
401 Union Street
Suite 3300
Seattle, WA 98101
aswaminathan@orrick.com

Ali Abugheida (*pro hac vice*)
aabugheida@orrick.com
405 Howard Street
San Francisco, CA 94105
aabugheida@orrick.com

*Counsel for Defendant Cox Enterprises, Inc.*

**LYNCH CARPENTER LLP**

*/s/ Nicholas A. Colella*
Nicholas A. Colella (GA Bar No. 299972)